# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STRATEGIC ENVIRONMENTAL
PARTNERS, LLC, *et al*,

        *Plaintiffs*,

    v.

SENATOR ANTHONY BUCCO, *et al*,

        *Defendants*.

Civil Action No. 13-5032

**OPINION**

---

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on two separate motions to dismiss the Second Amended Complaint of Plaintiffs Strategic Environmental Partners, LLC ("SEP"), Marilyn Bernardi, and Richard Bernardi (collectively, "Plaintiffs"). As discussed further below, this case concerns allegations that all the Defendants retaliated against Plaintiffs and illegally seized Plaintiffs' landfill. Defendants New Jersey State Senator Anthony R. Bucco ("Bucco" or "Senator Bucco"), the New Jersey Department of Environmental Protection ("NJDEP"), NJDEP Commissioner Bob Martin, and former NJDEP Deputy Commissioner Irene Kropp (collectively, including Senator Bucco, the "State Defendants") filed a motion to dismiss the Second Amended Complaint. D.E. 48.[1] Defendants Roxbury Township ("Roxbury"), Fred Hall, and Christopher Raths (collectively, the "Roxbury Defendants") joined the motion. D.E. 53. Defendant Atlantic

---

[1] The State Defendants' brief in support of their Motion to Dismiss, in which the Roxbury Defendants join, will be referred to hereinafter as "Gov't Br." (D.E. 48) and Plaintiffs' opposition to the State Defendants' brief will be referred to hereinafter as "Gov't Opp. Br" (D.E. 55). Atlantic's brief in support of its Motion to Dismiss will be referred to hereinafter as "Atlantic Br." (D.E. 49).

Response, Inc. ("Atlantic") filed a separate motion to dismiss. D.E. 49. Plaintiffs opposed both motions. D.E. 55, 57. On April 29, 2015, the Court entered an Order requiring the parties to submit further briefing on issues raised by the parties in their motions. D.E. 76. As ordered, the parties submitted supplemental briefing. D.E. 78-80, 82-83, 85-86. Because the motions raise similar issues of law and fact, the Court will consider the motions to dismiss together. For the reasons discussed below, both motions to dismiss are granted.

## I.      BACKGROUND

### A.      Factual Background[2]

This action arises out of a project (the "Project") undertaken by SEP to remediate a landfill in Roxbury Township, New Jersey. Plaintiff Marilyn Bernardi is the sole member of SEP and Plaintiff Richard Bernardi is her husband and an "authorized agent" of SEP. Second Amended Complaint ("SAC") ¶¶ 3-4, 51. Plaintiffs allege that Defendants violated their Constitutional rights, as well as multiple state laws and the New Jersey State Constitution, by interfering with the operation of the Project and by eventually taking control of the landfill. *Id.* at Introduction.

In 2010, SEP acquired 103 acres of real property in Roxbury Township that was formerly the known as the Fenimore Landfill (the "Landfill" or the "Site"), with the purpose of remediating the Landfill and developing the property as a solar farm. *Id.* at ¶¶ 13-14, 39-40.[3] Shortly after

---

[2] The factual background is taken from the Second Amended Complaint. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Plaintiffs and the NJDEP are engaged in related litigation in the Superior Court of New Jersey. *See Strategic Envtl. Partners, LLC v. NJDEP*, 438 N.J. Super. 125 (App. Div. 2014). The Appellate Division provided the following historical background, which this Court recites solely for context. In 2010, SEP purchased the Fenimore Landfill with the plan to cap and close the landfill and install a solar power generating facility. In October 2011, the NJDEP approved "a closure and post-closure plan for the landfill, which required SEP to close and maintain the landfill in accordance with the requirements of the Solid Waste Management Act (SWMA), N.J.S.A.

SEP acquired the property, Plaintiffs allegedly began to encounter opposition to the Project from Senator Bucco, the NJDEP, and the Roxbury Defendants. Plaintiffs assert that, while SEP was in the process of obtaining permits from NJDEP to proceed with the Project, Senator Bucco met with Mr. Bernardi and "told Mr. Bernardi that all permit applications related to the Landfill would have to be submitted through Senator Bucco's office." *Id.* at ¶¶ 49-52. SEP "ignored Senator Bucco's absurd demand . . . and declined to involve Bucco in its remediation project." *Id.* at ¶ 53. Plaintiffs also refused to comply with Roxbury's "demands," that SEP "apply to the Township for permission to undertake the remediation of the Landfill," as SEP believed that permission from the Township was not required. *Id.* at ¶¶ 54-55.

Plaintiffs contend that these refusals to involve Bucco or Roxbury in the Project "frustrated and angered" Roxbury, Bucco, Hall (Roxbury's Mayor) and Raths (Roxbury's Manager). *Id.* Plaintiffs allege that the ultimate source of Bucco and Roxbury's opposition to the Project was a fear that Roxbury could be liable for "negligent handling of the Landfill and the houses built around it." *Id.* at ¶¶ 48, 50. Plaintiffs also allege that Bucco feared Roxbury's potential liability because his son, Anthony M. Bucco, is the Township Attorney for Roxbury. *Id.* at ¶¶ 47-48. In addition to this fear of potential liability, Plaintiffs contend that Bucco and Roxbury opposed the Project because they believed, "correctly," that the Project would create heavy truck traffic on residential streets and that this would upset local residents. *Id.* at ¶ 45.

Plaintiffs allege that SEP's relationship with the NJDEP also soured when SEP objected to

---

13:1E-1 to -99.47." *Id.* at 132. The plan also included "certain conditions and a plethora of other plans, schedules and documents," including what "fill material" SEP was permitted to use and how SEP should address "malodorous emissions." *Id.* at 132-33. The NJDEP and SEP also executed an administrative consent order in October 2011, "which memorialized the closure plan . . . . and permitted [the NJDEP] to terminate the closure plan unilaterally upon written notice to SEP and take immediate action or seek injunctive relief to protect the public health, safety, or welfare." *Id.* at 133.

a provision of the "Closure Plan" for the Landfill.  In October 2011, the NJDEP issued a Closure

Plan to SEP, which permitted SEP to accept "construction and demolition screenings ("CDS"), a

non-hazardous, recyclable material to cap and fill the Landfill.  *Id.* at ¶ 56.  "Several months" after

the NJDEP issued the Closure Plan, Plaintiffs' objected to a provision of the plan that required

SEP to deposit all of its income from "tipping fees" (fees paid to SEP in consideration for accepting

NJDEP-approved fill material such as CDS) into an escrow account controlled by the NJDEP.  *Id.*

at ¶¶ 56-59.  Following SEP's refusal to deposit tipping fees into the escrow account, the NJDEP

issued an order "commanding SEP to cease operations at the Site."  SEP sought injunctive relief

against the NJDEP, but the parties resolved the matter with "an injunction by consent."  *Id.* at ¶¶

59-60.  The resolution was short-lived, however, because according to Plaintiffs, SEP's request

for an injunction "incensed and frustrated Defendants Martin, the NJDEP, Bucco and Roxbury,"

so that "Commissioner Martin and the NJDEP escalated [their] efforts to shut SEP down."  Bucco

and Roxbury allegedly "joined the NJDEP against SEP."  *Id.* at ¶¶ 61-62.

Subsequently, Plaintiffs allege that Defendants took the following actions as part of their

efforts to "shut SEP down":

- **Random Inspection and Injunction Application:**   In July 2012, the NJDEP
  conducted a "'random inspection' of the trucks entering SEP's Site which was in reality
  a staged and premeditated arrangement to create the appearance that SEP was accepting
  asbestos-containing-material," (*id.* at ¶ 63), and unsuccessfully sought an injunction
  against SEP on that basis (*id.* at ¶ 69).

- **Truck Stops:**  Also in July 2012, in response to complaints from residents of Roxbury
  about truck traffic related to the Project, "NJDEP, Township of Roxbury, Bucco and
  Martin enlisted the services of the New Jersey State Police to pull over and detain all
  trucks traveling to and from the Landfill."  *Id.* at ¶¶ 76, 79-80.  SEP then obtained
  injunctive relief "prohibit[ing] the NJDEP from taking any action to prevent SEP from
  accepting Fill Material at the [Landfill]."  *Id.* at ¶ 89.

- **Odor Complaints and Injunction Application:**  In November 2012, in response to
  complaints from nearby residents about odor emanating from fill material at the
  Landfill, the NJDEP and Roxbury applied for an injunction in the New Jersey Superior
  Court that would prevent SEP from accepting additional fill material until such material

4

was adequately shielded with cover soil. *Id.* at ¶ 94. The Superior Court eventually denied the injunction application. *Id.* at ¶ 95. In litigating the issue, however, SEP submitted a Certification to the Superior Court alleging that a conflict of interest had motivated the NJDEP's application for the injunction. The alleged conflict of interest arose because NJDEP Deputy Commissioner Irene Kropp was married to Brian Horne, owner of the Mullica Landfill in Harrison Township, New Jersey, a landfill that allegedly competes with SEP for tipping fees. *Id.* at ¶¶ 97-100. SEP also filed a complaint with the New Jersey State Ethics Commission regarding this alleged conflict of interest in January 2013. *Id.* at ¶ 101.

- **New Year's Eve Injunction Application to Judge Maenza:** Because the NJDEP's previous injunction applications had been denied by Superior Court Judge Deanne Wilson, Plaintiffs contend that Defendants conspired to seek relief from Judge Philip Maenza, to whom Bucco "has close personal and political ties." *Id.* at ¶¶ 105-108. Specifically, Plaintiffs contend that "Bucco and Roxbury enlist[ed] the services of an attorney, Daniel Marchese," who presented Judge Maenza with a Verified Complaint and application for an Order to Show Cause on behalf of Roxbury residents, without notice to Plaintiffs, on New Year's Eve of 2012. *Id.* at ¶¶ 113-115. Although Judge Maenza signed the Order to Show Cause temporarily enjoining continuation of SEP's Project, on January 2, 2013, Judge Wilson issued an order dissolving the restraints therein. *Id.* at ¶ 122.

- **Interference with SEP's Efforts to Address Odor Complaints:** Plaintiffs allege that "Defendants intentionally and maliciously withheld permission for SEP to undertake remedial action, and called upon the State Police to pull over and detain and deter trucks carrying cover soil to the Site, while simultaneously encouraging residents to register complaints about the odor." *Id.* at ¶¶ 132-133.

- **Tax Increase:** The Roxbury Township Tax Assessor, "working in concert with Defendants," allegedly raised SEP's taxes by over two thousand percent between 2012 and 2013. *Id.* at ¶ 136.

- **The Legacy Landfill Law:** In March 2013, Senator Bucco submitted proposed legislation to the State Senate (S2617) that would give the NJDEP authority to seize SEP's property. After being modified by the State Senate, the proposed legislation contained "a broad, State-wide standard" limiting emissions of hydrogen sulfide (H2S), the compound responsible for the odors emanating from the Fenimore Landfill, for all landfills within the state.[4] The NJDEP and Martin then proposed amendments which

---

[4] The State Defendants clarify that on March 4, 2013, Senator Bucco was the primary sponsor of a bill in the State Senate (S2617) proposing that the NJDEP assume responsibility for "proper closure of the Fenimore Landfill." This bill was never acted upon. *See* Gov't Br. at 9; *see also* New Jersey Legislature Bill Search Database for S2617, http://www.njleg.state.nj.us/bills/BillsByNumber.asp (last visited May 2, 2016). On June 6, 2013, Bucco and State Senator Bob Smith co-sponsored a bill (S2861) that addressed legacy landfills in general. This co-sponsored bill was eventually signed into law by Governor Chris Christie as the

were eventually adopted, and which limited the application of the new H2S standard only to "a legacy landfill or closed sanitary landfill facility." *Id.* at ¶¶ 138-144, 148. Governor Chris Christie signed the bill into law on June 26, 2013 (the "Legacy Landfill Law," N.J.S.A. 13:1E-125.1 to -125.9). *Id.* at ¶ 148.

- **Emergency Order to Seize Control of the Site:** Within a half hour of Governor Christie signing the Legacy Landfill Law on June 26, 2013, the NJDEP served Plaintiffs with an Emergency Order allowing the NJDEP to seize the Landfill, based on alleged violations of the law's new H2S standard. *Id.* at ¶¶ 149-151. Based on the timing of the Emergency Order, Plaintiffs concluded that "the Governor's office, Bob Martin, Senator Bucco, Roxbury Township and the NJDEP had carefully coordinated the timing of the Governor's signing of the new law." *Id.* at ¶ 151. The NJDEP also issued a press release on the same day, "wherein Commissioner Martin stated, 'The DEP has pursued every legal and administrative remedy available to us to eliminate the environmental and odor problems caused by the neglect of the property owner.'" *Id.* at ¶ 154. The NJDEP took control of the Landfill with the aid of New Jersey State Troopers and "third party contractors including Defendant Atlantic Response, Inc.," and "immediately began bulldozing and re-grading SEP's property." *Id.* at ¶ 153. Plaintiffs contend that NJDEP did not take readings of the H2S levels at the Landfill prior to seizing and bulldozing the land. *Id.* at ¶ 159.

## B.    Procedural History

Plaintiffs filed the Complaint in the instant action on August 22, 2013. D.E. 1. Plaintiffs then filed an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1) on September 30, 2013. D.E. 3. Motions to dismiss the Amended Complaint were subsequently filed on behalf of the State Defendants (Senator Bucco initially filed a separate Motion to Dismiss the Amended Complaint), the Roxbury Defendants, and Atlantic. D.E. 7, 8, 21 and 29. While those motions were pending, Plaintiffs filed two motions to amend, seeking to file a Second, and then Third, Amended Complaint. D.E. 16, 35. On June 9, 2014, the Court administratively terminated the motions to dismiss pending its ruling on Plaintiffs' Motions to Amend. D.E. 37. On August 4, 2014, the Court granted Plaintiffs' first Motion to Amend and denied Plaintiffs' Second Motion to Amend, permitting Plaintiffs to file the Second Amended Complaint. D.E. 43.

---

Legacy Landfill Law. *See Gov't Br.* at 9; *see also* New Jersey Legislature Bill Search Database for S2861, http://www.njleg.state.nj.us/bills/BillsByNumber.asp (last visited May 2, 2016).

Plaintiffs filed their hard to construe and sprawling Second Amended Complaint on August 8, 2014. Because Plaintiffs' allegations are often unclear, the Court took significant pains to interpret Plaintiffs' pleading liberally and believes that Plaintiffs assert multiple federal and state causes of action. Plaintiffs bring claims against all Defendants under 42 U.S.C. § 1983 ("Section 1983"), seeking compensatory and punitive damages for violations of Plaintiffs' rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Just Compensation Clause of the Fifth Amendment. SAC ¶¶ 173-85, 193-96. In addition, Plaintiffs bring state law claims against all Defendants for violations of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*; common law conversion; tortious interference with contract; tortious interference with prospective economic advantage; and conspiracy. *Id.* at ¶¶ 186-92, 197-210. Plaintiffs also allege that Bucco and Kropp violated the New Jersey Conflict of Interest Law, N.J.S.A. 52:13D-12 *et seq. Id.* at ¶¶ 213-15. Finally, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the Legacy Landfill Law, N.J.S.A. 13:1E-125.1 to -.9, is "unconstitutional and of no force and/or effect against Plaintiff for any act, omission or conduct which occurred prior to the enactment of said bill on June 26, 2013." *Id.* at ¶¶ 211-12. The constitutional challenge is based on an alleged violation of the New Jersey State Constitution rather than the United States Constitution.

On August 26, 2014, the State Defendants filed a Motion to Dismiss the Second Amended Complaint (D.E. 48), which the Roxbury Defendants joined. D.E. 53. Defendant Atlantic filed a separate Motion to Dismiss the following day. D.E. 49. Plaintiffs have opposed both motions. D.E. 55, 57. The State Defendants argue that the Second Amended Complaint should be dismissed in its entirety against the NJDEP, and Martin and Kropp, in their official capacities, pursuant to the doctrine of sovereign immunity. Gov't Br. at 6-7. The State Defendants also argue that the

claims related to the enactment of the Legacy Landfill Law should be dismissed as to Senator Bucco, Martin, and Kropp pursuant to the doctrine of legislative immunity. *Id.* at 8-10. As for the Section 1983 claims, the State Defendants argue that Plaintiffs fail to plead facts sufficient to establish any cognizable or plausible claim. *Id.* at 13-24. In addition, the State Defendants argue that even if the Second Amended Complaint sufficiently pled a Section 1983 claim, Bucco, Martin, and Kropp are shielded from liability pursuant to the doctrine of qualified immunity. *Id.* at 10-12. The State Defendants argue that Plaintiffs' Declaratory Judgment claim should also be dismissed because the Legacy Landfill Law is not unconstitutional special legislation under the New Jersey State Constitution, and that the claim should be dismissed pursuant to the *Younger* abstention doctrine. *Id.* at 24-31. Finally, the State Defendants argue that the remaining state law claims should be dismissed for lack of jurisdiction. *Id.* at 31-32.

Atlantic argues that the Section 1983 claims asserted against it should be dismissed because Plaintiffs fail to establish that Atlantic was a "state actor," which is required for Section 1983 liability. Atlantic Br. at 5-6. Atlantic further argues that because Plaintiffs' federal claims against it fail, the remaining state claims should be dismissed for lack of jurisdiction. *Id.* at 7. Atlantic also argues that the state law claims must also be dismissed because Plaintiffs' Second Amended Complaint does not plead facts sufficient to state any claims. *Id.* at 7-9.

On April 29, 2015, the Court entered an order requiring the parties to submit further briefing on three discrete issues raised in the parties' motion to dismiss briefing. D.E. 76. The Court ordered the parties to address whether Plaintiffs pled facts sufficient to establish that Defendants' conduct meets the "shocks the conscience" standard necessary to establish a substantive Due Process violation. *Id.* at 4. Plaintiffs, the State Defendants, and the Roxbury Defendants, if they chose to do so, were also ordered to address (1) the implication of the New

Jersey Superior Court, Appellate Division's decision in *Strategic Envtl. Partners, LLC v. NJDEP*, 438 N.J. Super. 125 (App. Div. 2014) on Plaintiffs' declaratory judgment claim; and (2) whether good cause exists for the Court to exercise discretion to decline jurisdiction over Plaintiffs' declaratory judgment claim. D.E. 76 at 4. As ordered, on May 15, 2015, the State Defendants submitted a supplemental letter brief addressing the three topics (D.E. 78), and Atlantic and the Roxbury Defendants submitted supplemental letter briefing addressing the "shocks the conscience" standard. D.E. 79 (Atlantic), 80 (Roxbury Defendants). On May 29, 2015, Plaintiffs submitted a supplemental letter brief in opposition to the Defendants' supplemental briefing. Plaintiffs' letter brief, however, only addressed whether the Second Amended Complaint pled facts sufficient to establish that Defendants' conduct meets the "shocks the conscience" standard. D.E. 82. On June 5, 2015, the State Defendants submitted a supplemental letter brief in reply to Plaintiffs' May 29 letter that addressed all three issues (D.E. 83), and the Roxbury Defendants filed a reply letter that addressed the "shocks the conscience" standard. The Roxbury Defendants also argued that the Court does not have subject matter jurisdiction to adjudicate Plaintiffs' claim regarding the allegedly improper tax assessment. D.E. 85. The Roxbury Defendants submitted an additional letter brief on June 26, 2015 regarding the tax assessment issue. D.E. 86.

Since filing the instant matter, Plaintiffs initiated related New Jersey state court litigation. First, on January 5, 2014, Plaintiffs filed an inverse condemnation claim in state court under the Eminent Domain Act, N.J.S.A. 20:3-1 *et seq*. *See* Gov't Br. at 24 n.8. Second, Plaintiffs appealed the June 26, 2014 Emergency Order and seizure. On November 13, 2014, the Appellate Division concluded that the NJDEP "exceeded its authority under N.J.S.A. 13:1E-125.4 by seizing control of SEP's property without first securing judicial approval" and erred in relying on H2S levels that were measured before the Legacy Landfill Law was passed. *Strategic Envtl. Partners, LLC*, 438

N.J. Super. at 131. The Court, however, remanded the matter to the Law Division to determine whether the H2S levels present on June 26 created an "imminent threat to the environment," which would have permitted the NJDEP to issue an Emergency Order pursuant to N.J.S.A. 13:1E-125.9. *Id.* at 143. Although the Appellate Division refused to address SEP's argument that the NJDEP's seizure deprived it of Due Process and constituted an unlawful taking, it did determine that the Legacy Landfill Law did not amount to unlawful special legislation, and is therefore valid under the New Jersey State Constitution.[5] *Id.* at 144-48. SEP appealed this decision, but the New Jersey Supreme Court denied certification on March 16, 2015. 221 N.J. 218 (N.J. 2015). Neither SEP nor the NJDEP has given the Court any indication as to the current procedural posture of either state court matter.[6]

## II.   **LEGAL STANDARD**

The State Defendants move to dismiss all claims asserted against the NJDEP, and Martin and Kropp in their official capacities, because they are shielded from liability under the doctrine of sovereign immunity. Gov't Br. at 6-7. A motion to dismiss based upon sovereign immunity is properly brought pursuant to Rule 12(b)(1) because sovereign immunity implicates the Court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of

---

[5] The New Jersey State Constitution provides that "the Legislature shall not pass any private, special or local laws." N.J. Const. art. IV, § VII. A law is unconstitutional special legislation when, "by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate." *Town of Secaucus v. Hudson Cty. Bd. of Taxation*, 133 N.J. 482, 494 (N.J. 1993).

[6] The Court notes that according to the New Jersey Courts Public Access website, the matter in which Plaintiffs allegedly filed their inverse condemnation claim, *Hoffman v. Strategic Envtl. Partners*, MRS-L-2621-13 (N.J. Super. Ct. Law Div.), was dismissed without prejudice on April 29, 2016. *See* http://njcourts.judiciary.state.nj.us/web15z/ACMSPA/index.jsp (last visited May 3, 2016).

subject matter jurisdiction."). In deciding a Rule 12(b)(1) motion to dismiss, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Young v. United States*, --- F. Supp. 3d ---, 2015 WL 9592442, at *5 (D.N.J. Dec. 2, 2015). Here, the State Defendants assert the defense of sovereign immunity through the pleadings alone, thereby raising a facial attack. *See Perez v. New Jersey*, No. 14-4610 (CCC-JBC), 2015 WL 4394229, at *3 (D.N.J. July 15, 2015) ("[T]he State Defendants' motion asserts the defense of sovereign immunity based on the facts as pleaded in the Second Amended Complaint and is thus a facial attack."). Accordingly, "the court must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

All of the Defendants argue for dismissal of the remaining claims pursuant to Rule 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of

her claims." *Id.* at 789.  A complaint that only pleads facts that are consistent with a defendant's liability, however, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 786.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, therefore, they are not entitled to an assumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

## III.   **DISCUSSION**

For the reasons set forth below, all of Plaintiffs' claims against the NJDEP, and against Martin and Kropp in their official capacities will be dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Plaintiffs' Section 1983 claim addressing the Legacy Landfill Law (Count Three) will be dismissed with prejudice because it is barred by the doctrine of legislative immunity.  Plaintiffs' Just Compensation Section 1983 claim (Count Six) will be dismissed without prejudice because it is not ripe for federal review.  Plaintiffs' remaining Section 1983 claims (Counts One and Two) will be dismissed against the remaining Defendants for failure to state a claim pursuant to Rule 12(b)(6).  Consequently, the Court will not address whether any of the Defendants are entitled to qualified immunity for the Section 1983 claims.  Because the Court would be forced to address whether the Legacy Landfill Law is constitutional under the New Jersey State Constitution – an issue that has already been decided by a New Jersey appellate court – the Court declines to exercise its jurisdiction to hear Plaintiffs' Declaratory Judgment claim (Count Ten).  Finally, the Court also declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims (Counts Four, Five, Seven, Eight, Nine, and Eleven).

Accordingly, these claims will also be dismissed.

### A.   Sovereign Immunity

The State Defendants argue that sovereign immunity bars all of Plaintiffs' claims against the NJDEP, and the claims against Martin and Kropp in their official capacities.  Gov't Br. at 6-7. Plaintiffs did not address this aspect of the State Defendants' motion to dismiss.  Generally, the Eleventh Amendment "protects a state or state agency from suit brought in federal court by one of its own citizens regardless of the relief sought."[7] *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) (quoting *MCI Telecomm. Corp. v. Bell Atl.*, 271 F.3d 491, 503-04 (3d Cir. 2001)).  In addition, suits against state officials acting in their official capacity are also barred by sovereign immunity because "such a suit is no different from a suit against the State itself." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013).

Although there are three exceptions to sovereign immunity, none apply in this case.  First, "Congress may abrogate state sovereign immunity in the exercise of its power to enforce the Fourteenth Amendment." *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 713 (D.N.J. 2004).  It is clear, however, that Congress did not abrogate states' sovereign immunity in enacting Section 1983.  *Id.* at 714.  Second, a state may waive sovereign immunity by consenting to suit in federal court by "invok[ing] [its] jurisdiction by bringing suit," or by making "a clear declaration that it intends to submit itself to our jurisdiction." *MCI Telecomm. Corp.*, 271 F.3d at 503-04.  Plaintiffs do not argue, and there is no indication that New Jersey waived its sovereign immunity here. Under the third exception, the *Ex Parte Young* doctrine, "individual state officers can be sued in

---

[7] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law."[8]  *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). This action, however, only asserts claims for damages so the third exception does not apply. *See* SAC Prayers for Relief ¶¶ 1-3.

Sovereign immunity thus bars the Court from hearing the federal claims Plaintiffs assert against the NJDEP, and Martin and Kropp in their *official capacities*. *See, e.g., Shieldalloy Metallurgical Corp. v. NJDEP*, 743 F. Supp. 2d 429, 434-40 (D.N.J. 2010) (dismissing case against NJDEP and acting Commissioner due to sovereign immunity). Plaintiffs' state law claims against the NJDEP, and Martin and Kropp in their official capacities, will also be dismissed because "[28 U.S.C.] § 1367(a) does not authorize district courts to exercise jurisdiction over claims against nonconsenting States," absent an exception to the State's sovereign immunity. *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 405 (D.N.J. 2008) (dismissing state law claims against state and state official acting in his official capacity).[9]  Because the Court lacks jurisdiction to hear any claims asserted against the NJDEP, and Martin and Kropp in their official capacities, these claims will be dismissed with prejudice.

The Second Amended Complaint asserts claims against Martin and Kropp in their

---

[8] The theory of the *Ex Parte Young* doctrine is that a claim for prospective relief for an ongoing violation of federal law is "not an action against the state because the [alleged violation] would strip the officer of his official authority." *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984)).

[9] Plaintiffs do not argue and the Court finds no evidence to suggest that New Jersey waived its sovereign immunity in enacting the NJCRA or the New Jersey Conflicts of Interest Law. *See* N.J.S.A. 10:6-2, 52:13D-21 to -23; *see also, e.g., Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 602 (D.N.J. 2010) (dismissing NJCRA claims asserted against state officials because the State did not waive its sovereign immunity). Further, the *Ex Parte Young* exception to sovereign immunity does not apply to state law claims. *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) (dismissing state law claims for prospective injunctive relief against state official because "*Ex Parte Young*'s exception to the Eleventh Amendment does not apply").

individual and official capacities (*see* SAC ¶¶ 7, 10), however, it completely fails to differentiate between their official and individual conduct. Because the Court must liberally construe Plaintiffs' pleading, the remaining analysis assumes that Martin and Kropp acted in their individual capacities.

**B.      Section 1983**

To state a Section 1983 claim, a plaintiff must allege "the violation of a right secured by the Constitution and the laws of the United States," and that "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Further, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Local governing bodies, as well as local government officials sued in their official capacities, can be liable under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 690 (1978).

Plaintiffs' Section 1983 claims against the remaining Defendants will be dismissed for failure to state a claim as discussed below.

**1.      First Amendment Free Speech**

In Count One of the Second Amended Complaint, Plaintiffs allege that Defendants deprived Plaintiffs of their "right to exercise free speech without fear of governmental retaliation."[10] SAC ¶ 174. Plaintiffs allege that in November 2012, in response to the NJDEP and

---

[10] The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment has been interpreted beyond its plain

Roxbury's "application for an order enjoining SEP from accepting any more CDS," SEP submitted a Certification from Richard Bernardi to the New Jersey Superior Court that brought to light a conflict of interest at the NJDEP. *Id.* at ¶ 97. In the Certification, Mr. Bernardi claimed that Kropp had a conflict of interest because her husband owned a landfill in southern New Jersey, the Mullica Hill Landfill, that "like SEP's property, earns tipping fees from the acceptance of fill material." *Id.* at ¶ 98. Mr. Bernardi's Certification "cited specific examples of third-parties who delivered CDS to both SEP and Mullica Hill." *Id.* at ¶ 100. Plaintiffs therefore allege that if SEP was ordered to stop accepting CDS, it would result "in an immediate and substantial financial benefit to [] Kropp by redirecting shipments of revenue-generating CDS from SEP's property to the Mullica Hill landfill owned by Kropp's husband." *Id.* at ¶ 99. Plaintiffs allegedly raised this same conflict of interest in an Ethics Complaint that was filed in January 2013 with the New Jersey State Ethics Commission. *Id.* at ¶ 101. Mr. Bernardi's Certification and the Ethics Complaint were allegedly "lawful exercise[s] of Plaintiffs' right to engage in free speech as guaranteed by the U.S. Constitution." *Id.* at ¶¶ 99, 103. Plaintiffs also allege that because they brought Kropp's conflict of interest to light, "the Defendant State Officials did, in fact, retaliate against Plaintiffs by further obstructing Plaintiffs' landfill redevelopment project." Gov't Opp. Br. at 14.

To state a First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in a protected activity; (2) defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising his rights; and (3) there was a causal connection between the protected activity and retaliatory action. *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The requisite causal connection may exist if there is "(1) an unusually suggestive

---

wording to guarantee the right to speak freely, and through the Fourteenth Amendment, applies to states. *Doe v. Banos*, 713 F. Supp. 2d 404, 411 n.10 (D.N.J. 2010).

temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* If such proof is not available, "the plaintiff must show that from the evidence gleaned from the record as a whole the trier of fact should infer causation." *Id.*

The speech in Mr. Bernardi's Certification and the Ethics Complaint is constitutionally protected. *Mayer v. Gottheiner*, 382 F. Supp. 2d 635, 647 (D.N.J. 2005) ("Generally, except for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment."). At issue, however, is what each Defendant is alleged to have done in retaliation, and whether Plaintiffs' pleading sets forth facts sufficient to support the plausible inference of a causal connection between the speech and the retaliatory action.

As noted above, to state a Section 1983 claim, Plaintiffs must allege each Defendant's personal involvement in the alleged violations. *See Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to allege personal direction of or knowledge and acquiescence in retaliatory actions by individual defendants). Conclusory statements accompanying "[t]hreadbare recitals of the elements of a cause of action" are insufficient. *See Iqbal*, 556 U.S. at 678. Rather, a complaint must contain well-pleaded facts that "permit the court to infer more than the mere possibility of misconduct," thus "show[ing] . . . that the pleader is entitled to relief." *Id.* at 679; *see also Morris v. Phila. Hous. Auth.*, No. 10-5431, 2011 WL 1661506, at *5 (E.D. Pa. Apr. 28, 2011) (dismissing retaliation claims against "other Defendants," where plaintiffs alleged only that "'others' . . . reacted with 'rage' and 'retaliation,'" but "nothing in [plaintiff's] Complaint suggest[ed] that [other Defendants] participated, directed, or were even

aware of his speech or the alleged retaliation").

Here, Plaintiffs have not alleged facts sufficient to survive a motion to dismiss for their Section 1983 claim regarding alleged violations of their First Amendment Free Speech rights for any Defendant. Although Count One of the Second Amended Complaint generally alleges that all Defendants are liable for violations of their First Amendment rights, Plaintiffs appear to concede that their First Amendment claim is limited to the "Defendant State Officials." *See* Gov't Opp. Br. at 14. As a result, the Court will dismiss the First Amendment claim as to the Roxbury Defendants.[11]

As for Atlantic and Bucco, Plaintiffs plead no facts that even suggest they were aware of Mr. Bernardi's Certification or the Ethics Complaint, or that either Defendant had any motive to retaliate against Plaintiffs for raising the alleged conflict of interest. Thus, Plaintiffs fail to state a retaliation claim as to Atlantic and Bucco. *See Cooper v. Menges*, 541 F. App'x 228, 232-33 (3d Cir. 2013) (affirming summary judgment for defendants on First Amendment retaliation claims (1) because plaintiffs could not establish that parties who allegedly retaliated were aware of plaintiffs' allegedly protected speech and (2) because factors other than retaliatory motive—such as personal relationships and business size—likely resulted in unfavorable treatment of plaintiffs).

Despite the fact that the conflict of interest directly involved Kropp, the Second Amended Complaint lacks facts that demonstrate Kropp retaliated against Plaintiffs. Beside the limited discussion of the conflict of interest and the conclusory statement that the Ethics Complaint "incensed" Kropp and "motivated and influenced" her actions (SAC ¶ 104), Kropp's name does

---

[11] Even if Plaintiffs do mean to assert a First Amendment claim against the Roxbury Defendants, it would be dismissed pursuant to Rule 12(b)(6) because Plaintiffs' pleading fails to establish each of the Roxbury Defendants' personal involvement in the alleged retaliation. *See Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

not appear in the Second Amended Complaint.  Simply, there are no factual allegations (other than conclusory terms) reflecting that Kropp engaged in any retaliatory acts.  Plaintiffs' conclusory statements that all Defendants conspired to violate Plaintiffs' civil rights,[12] without any specific facts alleging an agreement or concerted action, are not entitled to a presumption of truth.  *See Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("Without more, the bare allegation of an agreement is insufficient to sustain a conspiracy claim.").  Thus, Plaintiffs fail to provide facts that in anyway demonstrate that Kropp retaliated against them and the First Amendment claim is dismissed as to Kropp.

Plaintiffs also fail to plead facts that demonstrate causation as to Martin.  Instead, the facts in Plaintiffs' Second Amended Complaint strongly suggest that Martin was motivated by odor complaints, not because Plaintiffs discussed Kropp's alleged conflict of interest.  *See, e.g.*, SAC ¶¶ 106, 112-26 (alleging that Defendants, including Martin, arranged a clandestine meeting with a[nother] judge because Judge Wilson "was not persuaded that the alleged odors justified interrupting the beneficial remediation project").  Moreover, Martin's alleged efforts to shut down the Project began months *before* Plaintiffs first exercised their First Amendment rights in November 2012.  *See, e.g.*, *id.* at ¶¶ 58-60 (explaining that in May 2012 the NJDEP attempted to enjoin the Project because SEP would not escrow all of the tipping fees with the NJDEP); ¶¶ 79-80 (alleging that Defendants, including Martin, requested that New Jersey State Police Troopers pull over trucks traveling to the Landfill in July 2012).  Consequently, "from the evidence gleaned from the record as a whole the trier of the fact [cannot] infer causation." *DeFlaminis*, 480 F.3d at

---

[12] *See, e.g.*, SAC ¶ 106 ("Defendants conspired again to evade due process by going to their own judge, Judge Maenza."), ¶ 135 ("Defendants conspired to confiscate SEP's property another way, this time by changing the rules and using extra-judicial measures."), ¶ 179 ("Each Defendant, in concert and conspiracy with the other Defendants, intentionally violated the civil rights of the Plaintiffs by their malicious and wanton disregard for Plaintiffs' property rights.").

267 (finding lack of causation where "[t]here is simply no basis in the evidence to link appellants' campaign to secure funding . . . and the District's delay in satisfying or rejecting their requests"); *see also Kundratic v. Thomas*, 407 F. App'x 625, 628 (3d Cir. 2011) (affirming decision that there was no causal nexus where "nothing suggests their conduct was propelled by a retaliatory impulse"); *Warren v. Fisher*, No. 10-5343 (JBS/KMW), 2013 WL 1164492, at *12 (D.N.J. Mar. 19, 2013) (dismissing retaliation claim because facts demonstrated that defendants' antagonism stemmed from events that began before Plaintiffs exercised First Amendment rights).

Consequently, the Court will dismiss the First Amendment Retaliation claim in its entirety.

### 2.    Equal Protection Violations

Plaintiffs also allege that Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment.[13] SAC ¶ 174.  While not artfully pled, Plaintiffs appear to allege that Defendants treated their Project differently than other landfill remediation projects in New Jersey.  *See* Gov't Opp. Br. at 15.  A plaintiff may proceed on a "class of one" Equal Protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To be similarly situated, "parties must be alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).

Plaintiffs' Second Amended Complaint is devoid of sufficient language that establishes they have been treated differently from others who are similarly situated.  Plaintiffs allege that the Mullica Hill Landfill, located in Harrison Township, New Jersey, is owned by Kropp's husband, and that it "earns tipping fees from the acceptance of fill material such as CDS."  SAC ¶¶ 97-98.

---

[13] The Fourteenth Amendment states in relevant part: "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.

Plaintiffs further allege that Mullica Hill "directly competes with SEP" because it accepts CDS from the same third-parties, and that if SEP was ordered to cease accepting CDS it would "result in an immediate and substantial financial benefit to [Kropp] by redirecting shipments of revenue-generating CDS" to Mullica Hill. *Id.* at ¶¶ 98-100. It is not until Plaintiffs' Opposition Brief that they make clear that Mullica Hill is the allegedly similarly situated party. But it is axiomatic that Plaintiffs may not present new facts through their briefing. *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations" that are first raised in a brief "in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)"). Consequently, the Second Amended Complaint fails to plead facts that adequately establish a similarly situated party exists and that it was treated differently than Plaintiffs. Therefore, Plaintiffs' Equal Protection claim fails and is dismissed.

Even if the Court gives Plaintiffs the benefit of the doubt and considers this newly raised argument, Plaintiffs fail to plead facts that corroborate that the Project was treated differently than the remediation effort at Mullica Hill. Plaintiffs' claim that Mullica Hill would receive CDS instead of SEP is nothing more than speculation. *Id.* at ¶ 95. Plaintiffs plead no facts to establish that this actually occurred or that Mullica Hill was even able to accept additional fill material. Further, Plaintiffs plead no facts to support the conclusory statement in their Opposition Brief that Mullica Hill was similarly situated. For example, there are no facts establishing that Mullica Hill was a legacy landfill subject to the newly enacted requirements of the Legacy Landfill Law, was creating pervasive, malodorous smells, or that the owners of Mullica Hill entered into a consent order with the NJDEP. *See Brick City Grill, Inc. v. City of Newark*, No. 14-4491 (KSH)(CLW), 2016 WL 1260019, at *5 (D.N.J. Mar. 30, 2016) (dismissing class of one claim because plaintiffs "have not alleged facts to support the inference that these locations are alike in all relevant

aspects"); *Warren v. Fisher*, No. 10-5343 (JBS/KMW), 2013 WL 1164492, at *9 (D.N.J. Mar. 19, 2013) (dismissing class of one claim because plaintiffs failed to plead such facts as the size, scope or impact of the mining operations or that other mines had similar matters pending before the planning board).

In addition, much like their First Amendment claim, Plaintiffs fail to plead any facts to establish each Defendant's specific role. Plaintiffs do not specify how each Defendant, "through the official's own individual actions," treated them differently (*see Iqbal*, 556 U.S. at 676), or that any Defendant acted irrationally.[14] *Brick City*, 2016 WL 1260019, at *5 (dismissing claim because plaintiff pled no facts to plausibly support an inference that defendants acted arbitrarily). Plaintiffs broad, conclusory statement that "Defendants' actions were irrational and motivated by malice and retribution" (Gov't Opp. Br. at 15) is simply not enough to survive a motion to dismiss.

### 3.    Due Process Violations

Plaintiffs allege that Defendants violated their Fifth and Fourteenth Amendment rights to Due Process. SAC ¶¶ 173-185. "Fifth Amendment [Due Process] protection only applies when the *federal government* seeks to deprive a person of life, liberty or property." *Robinson v. Fauver*, 932 F. Supp. 639, 645 n.4 (D.N.J. 1996). Because Plaintiffs do not assert any claims against a federal actor, Plaintiffs' Fifth Amendment Due Process claim fails and is dismissed.

The Fourteenth Amendment's Due Process Clause has both a procedural and a substantive

---

[14] Even assuming that Plaintiffs adequately pleaded they were treated differently than a similarly situated landfill remediation project, Plaintiffs' Equal Protection claim plainly fails as to the Roxbury Defendants and Atlantic because Plaintiffs have not alleged that these Defendants have any control over or interest in a landfill in Harrison Township. Therefore, based on the facts currently before the Court, neither the Roxbury Defendants nor Atlantic could have treated Plaintiffs differently than the Mullica Hill Landfill for the purposes of an Equal Protection claim.

component.[15] *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 138-39 (3d Cir. 2000). Procedural Due Process requires that state procedures for challenging the deprivation of a protected property interest satisfy certain procedural requirements. *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), abrogated on other grounds, *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003). For a substantive Due Process claim challenging the validity of non-legislative state action, a plaintiff must first establish that it has a protected, fundamental property interest. *Nicholas*, 227 F.3d at 139-42. Next, a plaintiff must establish that the state action is "arbitrary, irrational, or tainted by improper motive, or if so egregious that it shocks the conscience." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006).

### a.  Procedural Due Process

To plead a violation of procedural Due Process rights under the Fourteenth Amendment, a plaintiff "must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process." *DiBlasio*, 53 F.3d at 597. A state has adequate procedural Due Process "when it provides reasonable remedies to rectify a legal error by a local administrative body." *Id.* Therefore, when a party has access to full judicial process in which it may "challenge the administrative decision in question, the state has provided adequate procedural due process." *Id.* Here, it not clear whether Plaintiffs intend to allege a procedural Due Process claim with regards to the seizure of the Landfill. *See* SAC ¶¶ 174, 178-181. It is clear, however, that through New Jersey courts, Plaintiffs are challenging the NJDEP's seizure, *see Strategic Envtl. Partners, LLC*, 438 N.J. Super. at 139-44, and initiated an inverse condemnation proceeding, *see*

---

[15] The Fourteenth Amendment provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.

*Gov't Br.* at 24 n.8 (citing *Hoffman v. Strategic Envtl. Partners, LLC*, Dkt. MRS-L-2621-13 (N.J. Super. Ct. Law Civ.)).   As a result, there is no question that the State afforded Plaintiffs with adequate procedures to challenge the seizure.   *DiBlasio*, 53 F.3d at 598 (granting summary judgment for defendants on procedural due process claim because New Jersey provided constitutionally sufficient procedures for challenging adverse zoning decisions).   Consequently, to the extent Plaintiffs do plead a procedural Due Process violation, it is dismissed for failure to state a claim.

### b.  Legislative Immunity

In Count Three, Plaintiffs allege that Defendants violated their right to substantive Due Process of law by "creating, proposing, adopting, ratifying, obeying, following, enforcing, furthering or otherwise acting in concert with other Defendants who played a role in pushing through and adopting" the Legacy Landfill Law.[16]   SAC ¶ 183.   It is clear, and Plaintiffs do not dispute, that legislators are entitled to absolute immunity for their legislative activities.   *See Baraka v. McGreevey*, 481 F.3d 187, 195-96 (3d Cir. 2007).   Consequently, to the extent that Count Three addresses acts that Bucco took in his legislative capacity, specifically, proposing, amending and ratifying what ultimately became the Legacy Landfill Law, it will be dismissed as to Bucco because he is immune.   Plaintiffs, however, argue that much of Senator Bucco's conduct falls outside the scope of protected legislative action.   *Gov't Opp. Br.* at 18-19.   Bucco is not entitled to immunity for the alleged non-legislative conduct, which is raised through others counts of the pleading and will be addressed below.

---

[16] A plaintiff may also assert a substantive Due Process claim challenging the validity of a legislative act.   In most cases, a legislative act will withstand substantive Due Process challenge if it passes rational basis review.   *Cty. Concrete Corp.*, 442 F.3d at 169.   Here, the Court does not read Plaintiffs' pleading as raising a facial Due Process challenge to the Legacy Landfill Law so it will not address whether the law passes rational basis review.

Plaintiffs also allege that Martin proposed amendments to the Legacy Landfill Law. *See* SAC ¶¶ 143-44. He is likewise entitled to legislative immunity for the legislative component of Count Three because "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Baraka*, 481 F.3d at 202 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998)). There is no question that proposing amendments is a legislative function. *Id.* at 196. Plaintiffs do not allege any facts to establish that the remaining Defendants were involved with enacting the Legacy Landfill Law. Thus, Count Three is dismissed with prejudice in its entirety.

### c. Substantive Due Process

In their opposition papers, Plaintiffs state that their substantive Due Process claim is based on allegations that Defendants harassed and obstructed their Project through targeted police stops, ordered all permit applications to go through Bucco's office, planted or permitted asbestos to be delivered to SEP's property and then sought an injunction on that basis, interfered with Plaintiffs' efforts to address odor emissions, raised SEP's real estate taxes and forcibly seized Plaintiffs' property.[17] Gov't Opp. Br. at 10-11; Plfs' May 29, 2015 Supplemental Letter Brief at 3. Plaintiffs assert that the fundamental interests at issue here are their "right to be free from harassment in their land development efforts." Gov't Opp. Br. at 9. The "right to be free from harassment" in

---

[17] The Court will not address Plaintiffs' allegation that they "suffered substantial harm to their reputation" because Martin attributed the odor problems at the Landfill to SEP's neglect (Gov't Opp. Br. at 11-12) because Plaintiffs cannot amend their complaint through a brief. *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007). Plaintiffs certainly referenced Martin's statements in their pleading, but they failed to allege an injury to their reputation – raising the issue for the first time in their briefing. Similarly, the Court will not accept Plaintiffs' allegation that Defendants "acted corruptly in taking action to shut down SEP's landfill remediation project for the sole purpose of increasing profits for the NJDEP Deputy Commission's family's competing landfill." Plfs' May 29, 2015 Supplemental Letter Brief at 3. Again, although Plaintiffs' pleading mentions Kropp's connection to Mullica Hill, it fails to explain why the NJDEP seized the Landfill or that the decision to seize the Landfill was corrupt.

land development efforts is an interest entitled to substantive Due Process protection. *Cty. Concrete Corp.*, 442 F.3d at 170. Real property ownership is also entitled to Due Process protection. *DB Enter. Developers & Builders, Inc. v. Micozzie*, 394 F. App'x 916, 918 (3d Cir. 2010) (citing *Nicholas*, 227 F.3d at 141). Thus, in this instance the interests at issue are fundamental and entitled to substantive Due Process protection.

As stated above, for conduct to rise to the level of a substantive Due Process violation, it must shock the conscience. *United Artists*, 316 F.3d at 399-402. The "shocks the conscience" test is "not precise," but it is a high bar -- "[w]hat shocks the conscience is only the most egregious official conduct." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (internal quotations and citations omitted).

Whether conduct shocks the conscience "varies depending upon factual context." *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008). Conduct that may shock the conscience includes corruption, self-dealing, ethnic bias, or interference with an otherwise protected constitutional activity. *Eichenlaub*, 385 F.3d at 285-86. In *Eichenlaub*, for example, selectively enforcing zoning requirements, unannounced and unnecessary inspection and enforcement actions, delaying permits and approvals, improperly increasing tax assessments, and "malign[ing] and muzzl[ing] the [plaintiffs]" did not shock the conscience. *Id.* at 286. Instead, the Third Circuit found that such "complaints are examples of the kind of disagreement that is frequent in planning disputes." *Id.* Similarly, in *DB Enterprise*, the defendant state representative's coercion of plaintiff to perform construction work to benefit certain property in service of the mayor's political ambitions, false promises of reimbursement for the same, and threats to derail plaintiff's land development project did not shock the conscience. 394 F. App'x at 919-20. Notably, improper motive alone is not enough to shock the conscience. *See Locust Valley Golf Club, Inc. v. Upper Saucon Twp.*, 391

F. App'x 195, 199 (3d Cir. 2010) (that township official's zoning actions may have been motivated by "spite or in remote hope that he might one day purchase the property himself" was insufficiently egregious to constitute a substantive Due Process violation).

Based on the facts at hand, Defendants' alleged conduct does not shock the conscience. Even if true, Plaintiffs' allegations that Defendants harassed and obstructed the Project through targeted police stops, ordered all permit applications to go through Bucco's office, planted or permitted asbestos to be delivered to SEP's property and then sought an injunction on that basis, interfered with Plaintiffs' efforts to address odor emissions, and raised SEP's real estate taxes[18] are all very similar to the alleged conduct in *Eichenlaub*. *See* 385 F.3d at 286. In *Eichenlaub*, the similar conduct did not amount to a substantive Due Process claim. *Id.* (concluding that "the misconduct alleged here does not rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test'"); *see also Warren*, 2013 WL 1164492, at *10-11 (finding that conduct including delayed and denied applications to town committees, unannounced and unnecessary inspections, and retaliation did not "shock the conscience").

The remaining allegation, that Defendants[19] seized Plaintiffs' property pursuant the Emergency Order also does not shock the Court's conscience. Plaintiffs allege that Martin seized

---

[18] Plaintiffs are barred from seeking money damages through a Section 1983 claim that challenges the validity of a local tax assessment. *Reagle v. Elliot*, 80 F. App'x 737, 738 (3d Cir. 2003); *see also Bluebeard's Castle, Inc. v. Gov't of Virgin Islands*, 321 F.3d 394, 397 (3d Cir. 2003) ("[T]he importance to the states of their tax systems is such that comity mandates that federal courts are ordinarily powerless to entertain challenges to state taxation, even under 42 U.S.C. § 1983."). The proper course of action, of which Plaintiffs appear to have availed themselves of (*see* D.E. 86), is to challenge the assessment through the New Jersey Tax Court. *Reagle*, 80 F. App'x at 738.

[19] Because Plaintiffs' Second Amended Complaint fails to allege that Bucco, Kropp, or the Roxbury Defendants were personally involved in issuing the Emergency Order and seizing the land, the Court will only address the substantive Due Process claim with regards to Martin and Atlantic's conduct. *See Iqbal*, 556 U.S. at 677.

control of their property pursuant to an Emergency Order, based upon alleged violations of the newly signed Legacy Landfill Law. SAC ¶¶ 149-150, 153. The NJDEP issued a press release the same day it seized the land, "wherein Commissioner Martin stated, 'The DEP has pursued every legal and administrative remedy available to us to eliminate the environmental and odor problems caused by the neglect of the property owner.'" *Id.* at ¶ 154. Plaintiffs contend that NJDEP had taken no readings of H2S levels at the Site prior to the seizure and that upon entering the Site, Atlantic began regrading and bulldozing the land. *Id.* at ¶ 153, 159.

Plaintiffs, however, fail to allege facts to demonstrate that Martin's conduct was egregious enough to shock the conscience. There are no facts demonstrating that Martin had a financial interest in Plaintiffs' land or engaged in self-dealing[20] (*see, e.g.*, *Dev. Grp., LLC v. Franklin Twp. Bd. of Supervisors*, 162 F. App'x 158, 160 (3d Cir. 2006) (affirming decision that conduct did not shock the conscience, in part, because plaintiffs failed to provide evidence to support allegation of self-dealing)), acted irrationally (*see, e.g.*, *Toll Bros, Inc. v. Township of Moorestown*, No. 10-4843, 2011 WL 2559507, at *9 (D.N.J. June 27, 2011) (dismissing substantive Due Process claim because even if defendants' "efforts at every turn may have been arbitrary, irrational, and tortious, the facts alleged do not rise to the level of . . . shock[ing] the judicial conscience")), or intended to unjustifiably injure Plaintiffs in a manner that was unrelated to a legitimate governmental purpose (*see, e.g.*, *Skiles v. City of Reading*, 449 F. App'x 153, 158 (3d Cir. 2011) (concluding that alleged conduct did not shock the conscience, in part, because the mayor instituted a policy with legitimate

---

[20] Although Plaintiffs allege that Kropp had a financial interest (drumming up business for her spouse's landfill in southern New Jersey) in shutting down the Project (SAC ¶¶ 98-99), Plaintiffs fail to allege that Kropp was personally involved in issuing the Emergency Order or seizure.

governmental interest)).[21]

The factual allegations as to Atlantic are even more sparse. Beside the conclusory allegations that all the Defendants, including Atlantic, conspired to deprive Plaintiffs of their land, and supported and participated in the seizure, Atlantic is only mentioned in a single paragraph of the 215-paragraph complaint. As discussed, Plaintiffs allege that when the NJDEP seized the Landfill, Atlantic accompanied the NJDEP agents and "unloaded heavy equipment and machinery and immediately began bulldozing and re-grading SEP's property." SAC ¶ 153. This bare factual allegation does not even come close to establishing that Atlantic was a state actor, which is necessary for Section 1983 liability, or that Atlantic's conduct was egregious enough to amount to a substantive Due Process violation. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 170 (3d Cir. 2004) ("To establish a claim under § 1983, [Plaintiff] must show that the defendants 1) were state actors who 2) violated his rights under the Constitution or federal law.").

Plaintiffs were operating in a highly regulated industry in which the NJDEP enforces laws and regulations to protect the environment and the public. *See, e.g.*, N.J.S.A. 13:1D-9 (setting forth powers of the NJDEP, including the power to enter and inspect property, institute legal proceedings to prevent pollution, and administer statewide environmental protection policies). Moreover, in October 2011, the NJDEP issued the Closure Plan permit specifically to SEP, under which the Plaintiffs' Project had to operate. *See* SAC ¶ 56. As a result, issuance of the Emergency Order and seizing Plaintiffs' land must be viewed through the lens of the NJDEP's regulatory power and its stated goal to "formulate comprehensive policies for the conservation of the natural

---

[21] The Appellate Division ultimately determined that the NJDEP exceeded its authority under the Legacy Landfill Law, finding that the NJDEP could not seize the Landfill unless the seizure was first approved through judicial action. *Strategic Envtl. Partners, LLC*, 438 N.J. Super. at 131. Yet, the Appellate Division made no finding that the NJDEP's action was outrageous or shocking.

resources of the State, the promotion of environmental protection and the prevention of pollution to the environment of the State."  N.J.S.A. 13:1D-9; *see also MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 442 (E.D. Pa. 2011) (concluding that conduct did not shock the conscience where environmental regulators were given broad discretion to investigate and regulate polluters); *Golden Years Homestead, Inc. v. Buckland*, 466 F. Supp. 2d 1059, 1069-70 (S.D. Ind. 2006) (finding no substantive Due Process violation in heavily regulated nursing care industry because activities were "consistent with a zealous adversarial posture arising from the regulatory mission"); *Edwards v. Dunn*, No. 10-CV-0145-O-BH, 2010 WL 1644134, at *4 (N.D. Tex. Mar. 31, 2010) ("The alleged conduct may show administrative arm-twisting to obtain voluntary compliance with DEA directives in a highly regulated industry, but Plaintiff has not alleged that Defendants' jawboning tactics crossed the line toward a cognizable constitutional violation, much less violated one.").

Plaintiffs cite to *Nicolette v. Caruso* to support their argument that the alleged conduct here shocks the conscience. 315 F. Supp. 2d 710 (W.D. Pa. 2003).  The plaintiff in *Nicollette* alleged that after he stopped disposing his waste at a specific landfill, which resulted in decreased fees to the Township, the Township initiated "a retaliatory campaign of unrelenting harassment and abuse." *Id.* at 715. Specifically, the plaintiff alleged that he was subjected to selected enforcement of Township regulations and his plans to construct and operate various businesses were denied. *Id.* The *Nicolette* court determined that the alleged "course of conduct undertaken . . . with the intent to harm and restrict" plaintiff's business was a "close question," but did "implicate[] the 'shocks the conscience' test sufficiently to survive the motion to dismiss." *Id.* at 723. *Nicolette*, however, involved a *pro se* plaintiff so his pleading "was subjected to less stringent standards." *Id.* at 717.  More importantly, *Nicolette* was decided before *Eichenlaub*, where, as discussed, the

Third Circuit set forth the high bar that is necessary to pass the shocks the conscience test for land use disputes. *Eichenlaub*, 385 F.3d at 286. In addition, *Prosperi v. Township of Scott*, which is also cited by Plaintiffs to support their substantive Due Process argument, is also distinguishable because there the plaintiffs alleged that the government conduct had no rational governmental purpose. No. 06-501, 2006 WL 2583754, at *5 (W.D. Pa. Sept. 7, 2006). Plaintiffs make no similar allegation here.

Because Plaintiffs fail to plead facts alleging conduct that passes the shocks the conscience test, Plaintiffs' Fourteenth Amendment Substantive Due Process claim is dismissed.

### 4.   Deprivation of Property Without Just Compensation

Plaintiffs allege that they have been deprived of their property without just compensation and "seek a judgment in the amount of the fair value of the property of which they have been deprived." SAC ¶¶ 194-96. The State Defendants argue that Plaintiffs' Just Compensation claim should be dismissed because it is not yet ripe. Gov't Br. at 24. Plaintiffs do not address this portion of the State Defendants' Motion to Dismiss.

The Fifth Amendment proscribes the taking of property without just compensation. U.S. Const. amend. V.[22] The takings prohibition "appl[ies] to state and local governments through the Fourteenth Amendment." *Toll Bros., Inc.*, 2011 WL 2559507, at *13. The Fifth Amendment, however, does not require payment at the time of the taking. Rather, it requires that "a reasonable, certain and adequate provision for obtaining compensation exists." *Chainey v. Street*, 523 F.3d 200, 223 (3d Cir. 2008). If such a provision exists, "no constitutional violation occurs until just compensation has been subsequently denied." *Id.* As a result, "a plaintiff cannot claim a violation

---

[22] The Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." U.S. Const. amend V.

31

of the Just Compensation Clause until he or she has exhausted a state's procedure for seeking just compensation." *Cty. Concrete Corp.*, 442 F.3d at 168.

New Jersey has adequate inverse condemnation procedures. *Toll Bros., Inc.*, 2011 WL 2559507, at *13 (*citing* N.J.S.A. 20:3-1 *et seq*). Here, Defendants contend that Plaintiffs have taken advantage of these inverse condemnation procedures by filing a claim in state court on January 5, 2014. Gov't Br. at 24 n.8. As a result, Plaintiffs' Just Compensation claim is dismissed because it is not yet ripe. *Toll Bros*, 2011 WL 2559507, at *13 (citing *Peduto v. City of Wildwood*, 696 F. Supp. 1004, 1009 (D.N.J. 1988)).

### 5. Section 1983 Conspiracy

It appears that Plaintiffs also plead a Section 1983 conspiracy claim. Plaintiffs allege that "[e]ach Defendant, in concert and conspiracy with the other Defendants, intentionally violated the civil rights of the Plaintiffs." SAC ¶¶ 179, 183, 194. To state a claim for a Section 1983 conspiracy, a plaintiff must allege facts to support the existence of an agreement and a concerted action. *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009). In addition, a plaintiff must allege "a deprivation of a federally protected right." *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). Because Plaintiffs fail to establish any underlying violation of a constitutional right, the conspiracy claim is also dismissed. *See White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010) ("[T]he District Court properly granted summary judgment on White's conspiracy claims because White cannot establish an underlying violation of his constitutional rights."). In addition, beside the conclusory allegation that Defendants acted "in concert and conspiracy with the other Defendants" (*see, e.g.* SAC ¶ 179), Plaintiffs fail to set forth facts to establish an agreement or concerted action. Therefore, the Section 1983 conspiracy claim also fails on these grounds. *See Martinez v. New Jersey*, No. 11-2223 (SDW)(MCA), 2012 WL 2116407, at *6 (D.N.J. June 11,

2012) ("Simply alleging 'agreement' without facts from which that agreement can be inferred is insufficient.").

### 6. Qualified Immunity

Because Plaintiffs fail to sufficiently plead a Section 1983 claim, the Court need not address the State Defendants' argument that they are entitled to qualified immunity. *See Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) (stating that qualified immunity comes into play when a state actor's actions give rise to a Section 1983 claim).

### C. Declaratory Judgment

In Count Ten, Plaintiffs seek a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (the "DJA"), "declaring that the new Bucco Bill (N.J.S.A. 13:1E-125 *et seq*) [the Legacy Landfill Law] is unconstitutional and of no force and/or effect as against Plaintiff." SAC ¶ 212. The State Defendants argue that Count Ten should be dismissed based on the *Younger* abstention doctrine. Gov't Br. at 24-28. The Court, however, need not address the *Younger* abstention doctrine to dismiss this claim.

The DJA "confers discretionary, rather than compulsory, jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134-37 (3d Cir. 2014) (affirming dismissal of declaratory judgment claim that "raises issues of state law peculiarly within the purview of the Pennsylvania court system which are better decided by that system"). The Supreme Court has made clear that even if a district court has jurisdiction, it may exercise discretion pursuant to the DJA and dismiss a claim when there is a parallel state court proceeding involving the same parties, and the issue in controversy addresses state law. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995). That is precisely the issue here. In this instance, Plaintiffs argue that the Legacy Landfill Law is unconstitutional under the New Jersey State Constitution, not the United

States Constitution, in contravention of the provision that prohibits special legislation.  Plaintiffs,

however, raised the same argument in parallel proceedings with the NJDEP in New Jersey state

court.  *See Strategic Envtl. Partners, LLC*, 438 N.J. Super. at 144-47.

This decision to dismiss Count Ten is even more clear because while this case has been

pending, the Appellate Division rejected Plaintiffs' special legislation argument and determined

that the Legacy Landfill Law is lawful under the New Jersey State Constitution.  *Id.*  Plaintiffs

appealed the decision, but the New Jersey Supreme Court declined to hear the case.  221 N.J. 218

(N.J. 2015).   There is no reason why this Court should involve itself in determining the

constitutionality of a state statute under the New Jersey State Constitution when the issue has been

addressed by the New Jersey courts.  *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015)

("[W]e recognize that California courts are the ultimate authority on that [California] law."); *Doe

v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997) (dismissing claim challenging constitutionality of

state statute due to the "respect for the right of a state court system to construe that state's own

constitution and [] statute"); *Flowers v. Phelps*, 514 F. App'x 100, 104 (3d Cir. 2013) (affirming

judgment on the pleadings because "the Delaware Supreme Court has already determined that [the

rule] is inappropriate for Delaware, and any cognizable challenge to the ruling must be filed in

Delaware's state courts" (internal quotations omitted)); *see also Trump Hotels & Casino Resorts,

Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 487 (3d Cir. 1998) (affirming district court's refusal to

exercise supplemental jurisdiction over state law claim due to "a complex issue of state law which

is better left to the New Jersey courts to determine").   As a result, the Court will exercise its

discretion and dismiss Count Ten.

      **D.**    **Supplemental Jurisdiction**

Supplemental jurisdiction allows federal courts to hear state law claims "when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998). Supplemental jurisdiction, however, is discretionary. A court may decline to exercise its jurisdiction pursuant to Section 1367 if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision of whether to decline jurisdiction over state law claims "should be based on considerations of judicial economy, convenience and fairness to the litigants." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). Further, "[w]here the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 320 (D.N.J. 2015). Because the Court is dismissing every federal law claim, it will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Accordingly, these claims are dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court makes the following rulings:

(1) The Second Amended Complaint is dismissed, with prejudice, as to Defendant NJDEP, Defendant Bob Martin in his official capacity, and Defendant Irene Kropp in her official capacity for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

(2) Plaintiffs' Section 1983 claim addressing the enactment of the Legacy Landfill Law (Count Three) is dismissed with prejudice because it is barred by the doctrine of legislative immunity. Plaintiffs' remaining Section 1983 claims (Counts One, Two and Six) are dismissed without prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs, however, are granted leave to file an amended complaint within thirty (30) days as to these Section 1983 claims (Counts One, Two, and Six) that they assert against the remaining Defendants.

(4) Plaintiffs' Declaratory Judgment claim (Count Ten) is dismissed with prejudice because the Court declines to exercise its discretion pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

(5) In the absence of a federal claim, the Court declines to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims (Counts Four, Five, Seven, Eight, Nine and Eleven).  Plaintiffs may reinstate their state law claims if they decide to file an amended complaint.

An appropriate order accompanies this Opinion.

Dated: May 4, 2016

John Michael Vazquez, U.S.D.J.